CASE 25.—ACTION BY DAVID MARCUM AGAINST THE CHES-
APEAKE & OHIO RAILWAY COMPANY.—January
11, 1910.

# Chesapeake & Ohio Ry. Co. v Marcum

Appeal from Lawrence Circuit Court.

J. B. HANNAH, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

1. Master and Servant—Action for Injuries—Evidence.—In an
action against a railroad company for injuries to a servant
while acting under the charge of a foreman, the evidence
held to show that the foreman, from the effects of whiskey,
had become reckless, and was in a condition to take risks
which under ordinary circumstances he would not have taken.

2. Master and Servant—Injuries to Servant—Actions—Questions
for Jury.—In an action against a railroad company for in-
juries to an employe who was acting under the direction of
a foreman, the evidence held to make the question of the
gross negligence of the foreman one for the jury.

3. Master and Servant—Injuries to Servant—Gross Negligence
of Foreman.—A railroad company directed plaintiff, an em-
ploye, to assist in taking some supplies needed for the re-
pair of the railroad from a point where they were kept to
a point on the road where they were needed, and furnished a
hand car and placed it in charge of a section foreman. Plain-
tiff was injured by the car being thrown from the track, the
accident resulting as he claimed from the negligence of the
foreman in failing to apply the brakes to the car. It was not
claimed that the hand car or any of its parts was in any man-
ner defective, or not reasonably safe, or that the track was
not reasonably safe. Held, that the company would only be
liable for the gross negligence of the foreman, and that such
negligence would be the failure to exercise slight care.

4. Master and Servant—Injuries to Servant—Care as to
Place of Work.—It is the duty of a master to furnish the
servant with a reasonably safe place, material and appliances

in and with which to perform his labor, and he is liable for ordinary negligence in failing to perform this duty.

5. Master and Servant—Injuries to Servant—Delegation of Duty. —The duty of the master to furnish the servant with a reasonably safe place, material and appliances in and with which to work cannot be delegated to an agent.

6. Appeal and Error—Review——Presumptions.—Where there is nothing in the record to show which party offered an instruction that was given, it will be presumed that it was prepared and given by the court without the request of either party.

WORTHINGTON, COCHRAN & BROWNING, F. T. D. WALLACE and M. C. KIRK for appellant.

JOHN W. WOODS and CLYDE L. MILLER for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE NUNN—Reversing.

This appeal is from a judgment of the Lawrence circuit court for the sum of $983 damages, resulting from an injury received by appellee on account of the derailment of a hand car belonging to appellant. The hand car was in charge of one Blankinship, appellant's foreman or section boss. On April 7, 1907, appellee, together with a number of others, went to a station by the name of Fullers, Lawrence county, Ky., near which there was a large slip on the railroad right of way. About 3 o'clock in the afternoon appellant's superintendent, Hughes, directed Tom Blankinship, one of appellant's section foremen, to take a hand car and two or three men to aid him, and go to Louisa, and get some dynamite and caps and Dan Blankinship, another of appellant's foremen, and return to the slip. Appellee was one of the men selected by Tom Blankinship to aid him, the other two were Ben Blankinship and one Brown. They went to Louisa, obtained the supplies mention-

ed, started on their return and stopped for Dan Blankinship at his home in the suburb nearest the slip. When they arrived at that point it was raining, and they remained there about ten minutes, until it stopped raining, and again started on their return to the slip with Dan Blankinship. They traveled only a short distance when they noticed a very angry looking cloud coming in their direction; and the wind began to blow from behind them, increasing to such a velocity that it moved the car along at the rate of 12 miles an hour of its own force, and, according to all the witnesses, the car was gaining rapidly in momentum. At this time, Dan Blankinship, who had been using one of the levers to propel the car, and who was an old section foreman, asked Tom Blankinship, his brother, who was the foreman in charge of the car and the brakes thereon, to "rubber the brakes" —in other words, to check or stop the car—and about the same time appellee made a like request. Tom Blankinship answered, "Let her roll. You fellers are scared." They made a second request in a moment or two, with like results. Very soon after this Tom Blankinship did attempt to check the speed of the car by the use of the brakes, but failed to accomplish his purpose, and jumped from the car, which left only appellee and Ben Blankinship on the car, Dan Blankinship and Brown having jumped immediately before Tom Blankinship. By this time the hand car had reached a curve in the track, which fact coupled with the force of the wind may have caused it to leave the track, and it was found about 40 feet below on the side of the mountain. It is shown without contradiction that appellee was on the upper side of the car next to the embankment and between the handles of the levers on the car; being thus situated,

he could not escape from the car as the others did without very great danger to his person. When the car left the track, appellee was thrown into a ditch, severely hurt, and rendered unconscious. The amount of the judgment is small, if appellee was entitled to recover anything for his injuries.

Appellant contends that the court should have given a peremptory instruction to the jury to find for it, for the reason that his injuries resulted from the storm or cyclone, an act of God, which no human agency could have reasonably anticipated and provided against. If this were true, as a matter of course a peremptory instruction should have been given. Appellee's position is that, conceding the storm caused the car to be thrown from the track, appellant's servant, Tom Blankinship, was guilty of gross negligence in not stopping the car when the angry looking storm was approaching and at the time when his brother and appellee called his attention to it and requested him to stop the car. All the witnesses agree, including Tom Blankinship, that the car could have been stopped at that time if the brakes had been applied. And all the witnesses but one gave it as their opinion that Tom Blankinship could have stopped the car when requested the second time, if he had immediately used the brakes. Dan Blankinship testified that he did not request Tom to stop the car on account of the storm alone, but because the wind was moving the car at such a rate that he was afraid to remain on it until it reached the curve just ahead of them. Tom Blankinship, the foreman, testified that he had taken four or five drinks in Louisa, but was not drunk. The reasonable conclusion to be drawn from the evidence is that he, from the effects of the whisky, had become reckless and fearless, and was

in a state of mind to take risks which, under ordi-
nary circumstances, he would not have taken. In
volume 1, Thompson's Commentaries on the Law of
Negligence, sec. 73, in discussing the question of neg-
ligence of a defendant concurring with the act of
God, it is said: "Upon the same principle, if the
negligence of the defendant concurs with the act of
God, or with any other vis major, in producing a ca-
tastrophe, the defendant will be liable, provided he
might have foreseen the catastrophe and provided
against it, notwithstanding the vis major, by the exer-
cise of that degree of care which the law places upon
him, under the circumstances of the case." In our
opinion, there was some evidence of gross negligence
on the part of Tom Blankinship who was in charge
and control of the car, and it was a question for the
jury.

The court's instructions to the jury were without
fault, except in one particular. They placed a high-
er degree of care upon appellant's foreman in charge
of the car than the law authorized. They made ap-
pellant liable for the ordinary negligence of its fore-
man, when, under the facts of the case at bar, it was
only liable for the gross negligence of its foreman in
charge. If appellee did not receive his injuries as
the result of the gross negligence of Tom Blankin-
ship, appellant is not liable to him in damages. The
rule has long been established in this state that it is
the duty of the master, or employer, to furnish the
servant, or employe, a reasonably safe place, mater-
ial, and appliances in and with which to perform his
labor. This duty devolves upon the master, and he
can not delegate it to an agent so as to relieve himself
from this legal duty, and he is liable for ordinary
negligence in failing to perform this duty. This prin-

ciple is so well established that we deem it unnecessary to cite authorities sustaining it; it does not, however, apply to the case at bar. It is not charged nor intimated in the petition, nor shown by the testimony, that the master failed to furnish a reasonably safe track upon which to operate the hand car, nor is it alleged or proved that the hand car or any of its parts were in any manner defective or not reasonably safe. The whole of appellee's case depends upon the question as to whether or not Tom Blankinship, appellant's foreman, on the occasion mentioned was guilty of gross negligence in the management and operation of the hand car. On another trial, if the testimony is in substance the same, the court will omit instructions Nos. 1 and 2 defining ordinary care and negligence, and give in lieu of No. 3 the following: Gross negligence is the absence of slight care.

We find that by the latter part of instruction No. 4 the court told the jury that if they believed "Thomas Blankinship, by failing and refusing to stop said hand car and allow plaintiff to leave it, when he, said foreman, could have stopped it, and when he knew, or by the exercise of ordinary care could have known, that by reason of the storm it was dangerous not to do so, they will find for plaintiff, and unless they so believe they will find for defendant."

We further find that in the latter part of instruction No. 5, the court told the jury that if they believed from the evidence, "that the injury complained of was caused by an unusual wind storm or cyclone, which the defendant could not have anticipated and reasonably guarded against, and the injury prevented by the use of ordinary care, they will find that said injury, if any, was caused by 'act of God,' and will find for the defendant."

It will be noticed that the foregoing instructions permitted appellee, a servant of appellant, to recover for the failure of appellant's section foreman to exercise "ordinary care." That this is not the law has been too long settled in this state to need citation of authority. Appellant is only liable to appellee in this case for injuries resulting by reason of the failure of its section foreman, Tom Blankinship, to exercise slight care in the discharge of his duties. Therefore, the use of the word "ordinary" in the instructions above referred to is reversible error, and on another trial, instead of this word, the court should use the word "slight." See L. & N. R. R. Co. v. Foard, 104 Ky. 456, 47 S. W. 342, 20 Ky. Law Rep. 646.

Appellee's counsel contend that instruction No. 5 was offered by appellant's counsel. The record does not sustain this statement; it is silent upon the subject. There is nothing in the record showing who offered it, therefore the presumption is that it was prepared and given by the court without the request of either party. The error consists in the fact that the court based the right of appellee's recovery upon ordinary negligence, when it should have been based upon gross negligence.

For this reason, the judgment of the lower court is reversed and remanded for further proceedings consistent herewith.